UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WARD,

        Petitioner                         Case No. 03-cv-72701

v.                                               Hon. Arthur J. Tarnow

HUGH WOLFENBARGER,              **Combined motion and brief requesting immediate transfer order back to the Eastern District of Michigan, Southern Division**

        Respondent.

_____/

      In the last ten months, the Michigan Department of Corrections (MDOC) has transferred Michael Ward around the state to a total of five different prisons:

| Date | Moved From | Moved To |
|---|---|---|
| April 25, 2017 | Earnest Brooks CF (Muskegon) | → G. Robert Cotton CF (Jackson) |
| April 28, 2017 | G. Robert Cotton CF (Jackson) | → Gus Harrison CF (Adrian) |
| May 23, 2017 | Gus Harrison CF (Adrian) | → Macomb CF (New Haven) |
| November 8, 2017 | Macomb CF (New Haven) | → Chippewa CF (Kincheloe) |

      Prison officials have refused to explain the moves to Mr. Ward, noting that "prisoners are not entitled to transfer information." [Exhibit A, 05/25/17 Reply to Prisoner Correspondence]. When pressed, however, they alternatively claim it has been necessary to shuttle Michael Ward across the state "to create bed

1

space for other prisoners." [Exhibit B, 05/17/17 Memorandum Explaining Transfer from Brooks to Cotton; Exhibit C, 11/07/17 Macomb to Chippewa Transfer Order.]

The November 8, 2017 decision to transfer M. Ward to the Chippewa CF in the Upper Peninsula has been troubling. Since his arrival, prison guards have flooded Ward with misconduct tickets. As of the date of this filing, the total number of tickets was approaching twenty (20). No matter the severity, each one results in a loss of privileges that includes (1) being restricted to his room and (2) being barred from making phone calls -- even to his lawyers for ongoing litigation purposes. Given the volume of penalties he is currently serving, Mr. Ward will not be released from these restrictions until mid-April of 2018.

The repeated transfers are an unnecessary and punitive response to Mr. Ward's extensive litigation and grievance activity in connection with the case at bar. Counsel thus asks the Court to enter an order directing the MDOC to return Ward to the Macomb CF or another prison within the Eastern District of Michigan's Southern Division. The reasons for the motion are outlined below.

Counsel for the Respondent does not concur.

## Background

Since arriving at the Chippewa CF, Mr. Ward has accumulated a total of nineteen (19) tickets. Some have been for bathroom violations, in apparent disregard for Mr. Ward's serious bladder problems as a 67-year old man with an enlarged prostate. [Exhibit D, Flomax Prescription.] Another cited Ward for the improper storage of a footlocker that contained information about this case. And while several other tickets are for less serious infractions (e.g. loitering in his doorway, not properly making the bed, being out of place, etc.), each nonetheless carries major penalties.

First, the MDOC's policy directives dictate that even for minor infractions, all sanctions must run consecutively. [Exhibit E, MDOC Policy Directive 03.03.105, ¶ KKK.] Moreover, previous misconducts are probative of future punishment – meaning the more tickets they write and sustain against Ward, the more likely he is to be further restricted. [*Id.* at¶ KKK ("Hearing officers may consider all relevant information in determining a sanction, including the prisoner's prior record of misconduct guilty findings.")] The policy directives also describe the punitive nature of "toplock" and "loss of privileges" sanctions:

- "A prisoner on toplock shall not leave his/her cell, room, or bunk area for any reason without specific authorization from the appropriate staff person." [*Id.* at ¶ NNN]

3

- "Unless the hearing officer identifies specific privileges to be lost, all of the following privileges will be lost by a prisoner as a result of a 'loss of privileges' sanction:

  . . . Telephone except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney." [*Id.* at Attachment E.]

This has certainly been consistent with Ward's experience. He has received the maximum penalty of 5-days toplock in connection with every ticket where toplock was the chosen sanction. [*Id.* at Attachment D, identifying disciplinary options for Class II and Class III misconducts.] This means that Ward's 19 misconduct tickets have led to a cumulative loss of phone and other privileges until mid-April. The consequences for Ward have been palpable.

Most distressingly, the tickets have significantly impaired Ward's ability to communicate freely with counsel. Before moving to Chippewa CF, it was Ward's practice to speak by phone with counsel several times per week about matters pertaining to the habeas litigation. This arrangement facilitated prompt and efficient information sharing, and enabled counsel to respond to case-related concerns in real-time. That capability has now vanished and is not easily replaced. The 5-hour drive to Ward's prison, the unavailability of video-conferencing, and the prison's insistence that legal calls be pre-arranged and

scheduled at the facility's convenience have placed a noticeable strain on the attorney-client relationship.[1] Because these restrictions amount to a deprivation of Ward's constitutionally-protected freedoms of speech and association, as well as his right to access his habeas counsel, he asks this Court to intervene.

## I.   Discussion

Under the present circumstances, Mr. Ward's request for a transfer is warranted. Rule 23(a) of the Federal Rules of Appellate Procedure provides that, pending review of a decision in a habeas corpus proceeding commenced before the federal court, the person having custody of the prisoner **must not** transfer the prisoner elsewhere unless permitted by the Court:

> (a) Transfer of Custody Pending Review. Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. *When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.*

Fed. R. App. Proc. 23(a) (emphasis added). "The rule was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus

---

[1] Moreover, letter writing has not been much better, as it takes roughly six days for counsel to receive mail from Ward, and vice versa.

5

relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Hammer v. Meachum,* 691 F.2d 958, 961 (10th Cir. 1982); *Dade v. Sanders,* 2012 U.S. Dist. LEXIS 87272, 2012 WL 2390292 (D. Colo. 2012) (applying Rule 23(a) in a pending habeas action before the district court). Naturally, where a prisoner can demonstrate prejudice to the prosecution of the pending habeas action, a transfer should be granted. *Strachan v. Army Clemency and Parole Bd.,* 151 F.3d 1308 (10th Cir. 1998).

Here, the MDOC continues to flout the requirements of this well-established rule. Though it has moved Ward five times in the last ten months, **not once** did the MDOC seek the Court's permission to transfer Mr. Ward to another facility in compliance with Rule 23(a). Had they respected this requirement, they would have needed to articulate a legitimate, non-retaliatory reason independent of the current litigation to support their transfer application. *Strachan,* 151 F.3d at 1313. And they would have failed.

The most recent transfer order illustrates the point. Roughly one month after Mr. Ward filed a grievance to protest a misconduct ticket at the Macomb CF, the MDOC decided to transfer Ward up north. As reasons, the MDOC noted that Mr. Ward is a "strict vegetarian" and moving him was necessary "to accommodate bed space for an incoming prisoner. . . ." [Exhibit C, 11/07/17

6

Macomb to Chippewa Transfer Order.] Yet, the MDOC was later forced to admit that (1) Ward is not on any current vegetarian diet, and (2) the prison basically traded him in exchange for another inmate with a similar security classification. [Exhibit F, 12/5/17 Step 1 Grievance Response.]

That latter justification – the need to accommodate the programming needs of other prisoners – is a standard explanation that is frequently applied to Michael Ward. [*See,* Exhibit B, 05/17/17 Memorandum Explaining Transfer from Brooks to Cotton; Exhibit G, 05/19/17 Gus Harrison to Macomb Transfer Order; Exhibit C, 11/07/17 Macomb to Chippewa Transfer Order.] MDOC officials cite it so readily that a legitimate question arises as to whether Ward is the only Level II prisoner who can be moved at these facilities to make bed space for other inmates.[2]

---

[2] The one time the prison *didn't* transfer Ward for bed space was during the transition between Brooks CF in Muskegon and Cotton CF in Jackson. The MDOC claimed not to know they were sending Ward to the same prison as Stephen Cline, a man serving a 25-year sentence in large part because Mr. Ward testified against him in 2006. [Exhibit B, 05/17/17 Memorandum Explaining Transfer from Brooks to Cotton.] When Ward alerted them to the problem, the MDOC responded not by moving Cline, but by placing Mr. Ward in isolation. Three days later, the MDOC moved him again, this time to Gus Harrison CF in Adrian.

A more plausible explanation is that the MDOC orders the transfers for retaliatory reasons. After virtually every move, Mr. Ward has run into issues that have impacted the current case. Whether he was contesting the seizure of his typewriter and destruction of legal paperwork at Gus Harrison, or successfully challenging questionable misconduct tickets at Macomb, Mr. Ward vigorously exercised his grievance rights at every turn. Over time, officials at the new prisons come to see Ward as a nuisance and gladly transfer him away when given an opportunity to do so.[3] Of course, such retaliatory transfers are illegal. *Ward v. United States Parole Com.*, 804 F.2d 64, 66 (7th Cir. 1986) (opining that "the transfer may not be in retaliation for the suit or designed to make it hard for the prisoner to pursue the litigation.").

When presented with similar circumstances, federal courts have not hesitated to respond. *See, e.g. Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999) (opining that "a prisoner cannot be transferred in retaliation for his exercise of constitutionally protected rights[,]" and allowing § 1983 claim to proceed where jury could believe that petitioner's time-consuming grievances were the actual

---

[3] The officials at the Chippewa CF are perhaps the lone exception. Rather than transfer Ward again, they have responded by incapacitating him through a flurry of bogus tickets with restrictive penalties. *See,* Background, *supra.*

8

motivation for the transfers); *See also, McWright v. Gerald*, No. 03-70167, 2004 WL 768641 (E.D. Mich. Mar. 26, 2004) (Tarnow, J.) (allowing prisoner to proceed on claim of retaliatory transfer in violation of the First Amendment where transfer was after a short stay, was not administratively routine, and jail staff had threatened prisoner with a move "back up north" that would force his attorney to travel hundreds of miles to see him.) And "[w]hile it may be inconvenient . . . to seek permission from the court and wait for [a] [transfer] order, the Federal Rules of Appellate Procedure expressly dictate this procedure." *Dade v. Wands*, No. 11-CV-0430, 2012 WL 2390294, at *2 (D. Colo. May 30, 2012). The Court should hold the MDOC accountable for its noncompliance with Rule 23(a), lest it continue to harass and frustrate Ward's litigation efforts with impunity.

Mr. Ward contends that the Court need not inquire into Rule 23(a) prejudice given the MDOC's retaliatory motives in transferring him to the Chippewa CF. *See e.g., Vreeland v. Archuleta,* No. 14-02175, 2015 U.S. Dist. LEXIS 115462, at *8-9 (D. Colo. Aug. 31, 2015) (reciting conditional standard for relief: "Once the officials demonstrate a legitimate, non-retaliatory reason independent of the litigation in support of their application, an opposing inmate must establish that 'the transfer would deprive the court of jurisdiction or

9

substantially complicate the conduct of the litigation.'") (citing *Strachan*, 151 F.3d at 1313.

Yet, even if the Court does so inquire, it is plain that the MDOC's most recent transfer has disrupted Ward's ability to aid in the litigation, and therefore provides grounds for relief. First, Ward has been separated from some of his relevant legal records. The materials were treated as "excess" legal paperwork and therefore removed from his immediate presence as contraband. [Exhibit H, 12/11/17 Contraband Removal Record.] But without full access to his papers, Ward is unable to assist counsel in culling the relevant documents from his voluminous file for inclusion where appropriate into his merits brief.

Second, the extended sanctions from the nineteen tickets have substantially restricted Ward's communication with counsel, leading to a palpable deterioration in the attorney-client relationship. Valuable attorney time and resources have necessarily been diverted towards responding to Ward's transfer needs and managing the fallout. When coupled with (1) the 5-hour drive to Ward's prison, (2) the prison's insistence that legal calls be pre-arranged and scheduled at the facility's convenience, and (3) the six-day lag time for written correspondence, the November 8, 2017 transfer has created a hardship that is now frustrating Ward's ability to be a productive partner in the

10

conduct of his habeas litigation. The Court should no longer condone the MDOC's Rule 23(a) violations, particularly given the consequences for Mr. Ward.

**Conclusion**

For the reasons discussed above, Petitioner Ward asks the Court to issue an order that will direct the MDOC to transfer him back to the Macomb Correctional Facility or another facility located closer to his counsel, to take place within two weeks of the entry of the Court's order.

> FEDERAL DEFENDER OFFICE
> Legal Aid and Defender Assn., Inc.
>
> s/ Brandy Y. Robinson
> E-mail: Brandy_Robinson@fd.org
> Counsel for Petitioner, Michael Ward
> 613 Abbott St., Fifth Floor
> Detroit, MI  48226
> Telephone: (313) 967-5542

February 9, 2018