UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WARD,

     Petitioner,                 CASE NO. 2:03-cv-72701

v.                               HON. ARTHUR J. TARNOW

CARMEN PALMER,[1]

     Respondent.

_____

**Respondent's Response to Order to Show Cause**

**<u>Response</u>**

Respondent Carmen Palmer, through attorneys Bill Schuette, Attorney General for the State of Michigan, and Linus Banghart-Linn, Assistant Attorney General, responds to this Court's order to show cause, and says as follows:

Ward asks this Court to issue an order compelling Palmer to transfer Ward to Macomb Correctional Facility or to a prison that is closer to his attorney's office than Chippewa Correctional Facility

---

[1] Ward is currently housed at Michigan Reformatory, where his warden is Carmen Palmer.  The caption should be amended to reflect the change.

(where Ward was housed when he filed his motion) is.  The State

opposes the relief requested.

### A. Federal Rule of Appellate Procedure 23(a), the purported legal basis of Ward's motion and of this Court's show-cause order, has no application to this action.

Ward moves under Federal Rule of Appellate Procedure 23(a) to

have Ward transferred to his prison of choice as a sanction for the

States supposed violation of this rule.  But Appellate Rule 23(a) is

exactly what it purports to be, a rule of *appellate* procedure, and has no

application to this action, which is not pending in any appellate court.

The first and clearest indication that Appellate Rule 23(a) does

not apply here is the text of the rule itself.  The rule begins, "*Pending*

*review* of a decision in a habeas corpus proceeding . . ."  Fed. R. App. P.

23(a) (emphasis added).   No decision in a habeas proceeding is

currently under *review* in this case.  Rather, this Court is awaiting

briefing in order to *make* a decision in this habeas case.  The rule, by its

own terms, does not apply.

The second indication that Appellate Rule 23(a) does not apply

here is its placement in the Federal Rules of Appellate Procedure,

whose scope is governed by Appellate Rule 1(a)(1):  "These rules govern

procedure in the United States courts of appeals."  Again, this case is not pending in a United States court of appeals.

In *Hairston v. Nash*, the Third Circuit rejected a prisoner's argument that the Government violated Appellate Rule 23(a) by transferring him without permission, holding that "Hairston's reliance on Federal Rule of Appellate Procedure 23(a) is misplaced, because Hairston's § 2255 motion was not on appeal at the time he was transferred."  165 Fed. App'x 233, 235 (3d Cir. 2006).  The language of the rule "makes clear that the Rule is inapplicable to habeas petitions for which no decision has been issued and which are, therefore, not 'pending' appellate review."  *Id.*; *accord United States v. Pfluger*, 522 Fed. App'x 217, 218 n.1 (5th Cir. 2013).

Similarly, in *Evans v. Luoma*, this Court rejected a petitioner's motion under Appellate Rule 23(a), holding in part that the rule "applies only when a habeas petition is before a court of appeals on review of a district court's decision and is therefore inapplicable to habeas petitions that are pending in a federal district court."  2006 WL 2471938, at *1 (E.D. Mich. Aug. 24, 2006) (BORMAN, J.); *accord Modonas v. Bell*, 2008 WL 2357671, at *1 (E.D. Mich. June 6, 2008) (LUDINGTON,

3

J.); *Bridges v. Wolfenbarger*, 2007 WL 325356, at *3 (E.D. Mich. Jan. 31, 2007) (FRIEDMAN, J.); *Benedict v. United States Parole Commission*, 569 F. Supp. 438, 448 n.19 (E.D. Mich. 1983) (COHN, J.); *but see Brown v. Bergh*, 2015 WL 4934585, at *2 (E.D. Mich. Aug. 18, 2015) (DUGGAN, J.) (suggesting the contrary in dicta).

Outside Michigan, the other United States District Courts are nearly unanimous in their understanding that Appellate Rule 23(a) means what it says, and only applies when a habeas *appeal* is pending in a U.S. Court of Appeals.  *See, e.g.*, *Hargrove v. Masters*, 2017 WL 712758, at *1 (S.D.W. Va. Feb. 23, 2017); *Fontenot v. Ryan*, 2016 WL 3087297, at *2 (D. Ariz. June 2, 2016); *Jones v. Warden, Lebanon Correctional Institution*, 2015 WL 7829145, at *3 (S.D. Ohio Dec. 4, 2015); *Gomillion v. Williams*, 2014 WL 2946645, at *1 (M.D. Ga. June 30, 2014); *United States v. Brown*, 2013 WL 4403985, at *1 (E.D. Cal. Aug. 14, 2013); *Case v. Miller-Stout*, 2013 WL 104835, at *1 (W.D. Wash. Jan. 7, 2013); *Cook v. United States*, 2012 WL 5398181, at *1 (D.S.C. Nov. 2, 2012); *Corpening v. Johns*, 2012 WL 3228814, at *2 (E.D.N.C. Aug. 6, 2012); *McGhee v. Meisner*, 2012 WL 12925015, at *2 (E.D. Wis. June 6, 2012); *Daughtery v. Gomez*, 2011 WL 1058910, at *3

(C.D. Cal. Mar. 23, 2011); *Balter v. United States*, 2010 WL 3975843, at

*3 n.3 (M.D. Pa. Jan. 21, 2010); *Black v. Warden*, 2009 WL 1220491, at

*1 (W.D. La. May 4, 2009); *Nauman v. Mahoney*, 2008 WL 5396254, at

*5 (D. Mont. Aug. 1, 2008); *Templar v. Harrison*, 2008 WL 754925, at *4

(D. Kan. Mar. 19, 2008); *Royal v. Scibana*, 2008 WL 582349, at *6 (W.D.

Okla. Feb. 29, 2008); *O'Connell v. Patrick*, 2007 WL 2345294, at *1 n.5

(E.D. Pa. Aug. 15, 2007); *Lemoine v. Daniels*, 2007 WL 433197, at *1 (D.

Or. Feb. 2, 2007); *Charnock v. Herbert*, 60 F. Supp. 2d 91, 104

(W.D.N.Y. 1999); *United States v. Velazquez*, 1997 WL 89131, at *4

(N.D. Ill. Feb. 26, 1997); *Pethtel v. Attorney General of Indiana*, 704 F.

Supp. 166, 168–69 (N.D. Ind. 1989); *but see Vreeland v. Archuleta*, 2015

WL 5093207, at *3 (D. Colo. Aug. 31, 2015) (indicating the contrary in

dicta).

Furthermore, if Appellate Rule 23(a) applied to habeas cases

pending in the United States district courts, as Ward contends, the

effect would be crippling.  There are innumerable habeas petitions now

pending in the U.S. District Courts for Michigan's two districts.  If the

Michigan Department of Corrections were required to freeze every

prisoner with a pending habeas petition, the process of managing

incoming and outgoing (paroled or discharged) prisoners, and those

prisoners who need to be transferred for various reasons (including for

prisoners' own benefit), would become logistically unworkable.  And

such application of Appellate Rule 23(a) would create a great deal of

paperwork for the district courts in the form of necessary transfer

motions from MDOC.

Additionally, the policy considerations underlying Appellate Rule

23(a) are not advanced by its application in this case.  The point of

Appellate Rule 23(a) is not to make it easy for prisoners to effectively

prosecute their habeas cases.  Rather, the point is, as Ward himself

recognizes, "to prevent prison officials from impeding a prisoner's

attempt to obtain habeas corpus relief by physically removing the

prisoner from the territorial jurisdiction of the court in which a habeas

petition is pending."  (Dkt. 268, Mot. at 5–6 (quoting *Hammer v.*

*Meachum*, 691 F.2d 958 (10th Cir. 1982)).)  It should go without saying

that the State has not, will not, and would not attempt to remove Ward

from this Court's jurisdiction in order to illegitimately frustrate his

attempt to obtain habeas relief.

In any event, this Court will *always* have jurisdiction to entertain

Ward's petition regardless of where he is housed, because Ward was

6

convicted and sentenced within the Eastern District of Michigan.  See

28 U.S.C. § 2241(d) (providing that the district court for the district

within which the petitioner was convicted and sentenced shall have

jurisdiction to entertain a habeas petition); *Nauman*, 2008 WL 5396254,

at *5 ("At any rate, Nauman could be moved anywhere in Montana, and

this Court would still have jurisdiction over his custodian.").

Neither Ward in his motion nor this Court in its order has cited

any authority that supports the proposition that Appellate Rule 23(a)

may be applied in a case pending in a district court.  Ward cites *Dade v.*

*Sanders*, 2012 WL 2390292 (D. Colo. June 25, 2012) and characterizes it

as "applying [Appellate] Rule 23(a) in a pending habeas action before

the district court."  (Dkt. 268, Mot. at 6.)  But Ward errs:  although

*Dade* was a decision *by* the district court on the warden's motion to

transfer, the case at the time was *pending in* the Tenth Circuit U.S.

Court of Appeals.  *Wade*, 2012 WL 2390292, at *1 ("The [district court]

denied Petitioner's Rule 59(e) motion on April 11, 2012 . . . and his

appeal has since resumed"); and at *5 ("Given that Petitioner's case is

now before the Tenth Circuit Court of Appeals, . . .").  While *Dade*

stands for the proposition that a district court can *hear* a motion to

transfer under Appellate Rule 23(a),[2] it does not stand for the proposition that a district court can hear such a motion when the case is pending in district court.[3]

In light of the fact that the text of Appellate Rule 23(a), the text of Appellate Rule 1(a)(1), the Third Circuit, the Fifth Circuit, this Court, and the overwhelming majority of U.S. district courts support the State's interpretation of Appellate Rule 23(a), as do relevant policy considerations; and in light of the fact that neither Ward nor this Court has cited any case in which any court has applied Appellate Rule 23(a) in a habeas case pending in a district court; and in light of the fact that the State has searched for such a case and only found a small number of cases from two district courts that indicate in *dicta* that the rule applies, it is not tenable to hold that Appellate Rule 23(a) applies here. Still less is it tenable to accuse MDOC of "continu[ing] to flout the requirements of this well-established rule."  (Dkt. 268, Mot. at 6.)

---

[2] *But see Day v. Samuels*, 2007 WL 2212718, at *3–4 (D.N.J. July 30, 2007).

[3] Ward also cites *Dade v. Wands*, 2012 WL 2390294 (D. Colo. May 30, 2012).  This is the same case as *Dade v. Sanders*; the *Dade v. Wands* opinion is the Magistrate Judge's recommendation, and the *Dade v. Sanders* opinion is the District Judge's order on the recommendation.

This Court should discharge the show-cause order and deny Ward's motion simply because the purported legal basis of the motion does not apply to a habeas case pending in district court.

### B. Even if Appellate Rule 23(a) applied, Ward has not even attempted one of the required showings under that rule.

In its order directing a response, this Court noted that Ward was required to show "that a transfer resulted in prejudice to the prosecution of a pending habeas action" *and* that "a habeas petitioner who opposes transfer must establish that 'the transfer would deprive the court of jurisdiction or substantially complicate the conduct of the litigation.'" (Dkt. 269, Show Cause Order at 2.)  This Court went on to find that Ward had "made a colorable claim that his transfer between several different prisons has potentially prejudiced his ability to litigate his current habeas petition."  (*Id.*)

Assuming solely for the sake of argument that Ward has made such a colorable showing as to prejudice, he has not shown, or even attempted to show, that the transfer deprived this Court of jurisdiction over the petition, or that the transfer "substantially complicate[d] the conduct of the litigation."

As noted above, MDOC could transfer Ward anywhere in the state, and this Court would still have jurisdiction.  28 U.S.C. § 2241(d). And this matter is no more complicated whether Ward his housed at Chippewa, Muskegon, Macomb, or Ionia.  It may be more *difficult* for his counsel to communicate with him, but difficult is not the same as complicated.  The facts are the same, the record is the same, the law is the same.  This case has no more or fewer moving parts depending on where Ward is housed.

Because Ward cannot make even a colorable claim that the transfer either divested this Court of jurisdiction or substantially complicated the conduct of the litigation, the motion should be denied.

### C. Ward has not explained why he needs to be in constant communication with his attorney.

While the purported legal basis of Ward's motion is that MDOC has violated Appellate Rule 23(a), the purported factual basis of the motion is that MDOC has made it more difficult for Ward and his counsel to communicate about his habeas case than he would prefer.[4]

---

[4] Ward claims that restrictions on his ability to communicate with counsel not only make the habeas litigation more difficult, but also infringe on his First Amendment rights to free speech and free association.  (Dkt. 268, Mot. at 5.)  Aside from bordering on frivolous,

But Ward has not explained why he needs to communicate freely and frequently with counsel in order to prepare his supplemental brief. Counsel has Ward's file and the record.  Counsel can research the record and the law and marshal an argument on Ward's behalf.  "Given the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence." *Ryan v. Gonzales*, 568 U.S. 57, 68 (2013).  If an attorney can effectively represent an incompetent client—i.e., a client who cannot assist counsel *at all*, then there is no apparent reason why an attorney cannot effectively represent a client who can only assist with phone calls at prearranged times, and in-person visits that are less frequent than Ward considers optimal.  "Attorneys are quite capable of reviewing the state-court record, identifying legal errors, and marshaling relevant arguments, even without their clients' assistance." *Id.*

Ward has not attempted to explain what is special about his case that requires him to be in telephone contact with his attorney without having to arrange a time, or have in-person visits so frequent that the

---

this argument has no place in a habeas petition.  Ward is free to file a civil rights action.

distance constitutes an actual hardship.  Most of Ward's assertions on this point are vague:  "[The prior] arrangement facilitated prompt and efficient information sharing, and enabled counsel to respond to case-related concerns in real time," (Dkt. 268, Mot. at 4) while the new relationship "ha[s] placed a noticeable strain on the attorney-client relationship," (*id.* at 5), "sanctions . . . have substantially restricted Ward's communication with counsel, leading to a palpable deterioration in the attorney-client relationship," (*id.* at 10).

The only specific prejudice Ward alleges is that, "without full access to his papers, Ward is unable to assist counsel in culling the relevant documents from his voluminous file for inclusion where appropriate into his merits brief."  (*Id.*)  For one thing, Ward has resumed full access to his papers.  (Administrative Hr'g Report, attached as Ex. A.)  More to the point, Ward still does not explain why he needs to personally assist counsel, who ought to be able to recognize relevant documents in the file without lay assistance.  If the problem is that the file is so large, counsel should seek assistance within the federal defender's office, from a fellow attorney, a paralegal, secretary, or intern—not from an MDOC prisoner.  And if Ward's large file means

this brief will take longer to produce, the State has never objected to any extension Ward has sought.

In sum, Ward has not explained why he is the exception to the general rule, expressed in *Gonzales*, that an attorney in habeas proceedings is capable of representing her client even without the client's assistance.  Having failed to demonstrate any prejudice to the prosecution of the habeas action, Ward's motion should be denied.

### D. Ward has not demonstrated a retaliatory motive for his transfers.

Ward asserts that he should not even need to show prejudice because he has established a retaliatory motive behind the transfers. But he has not.

For one thing, the record of Ward's recent transfers among different prisons makes the claim of retaliatory motive implausible.  If MDOC wished to move Ward around to retaliate against him, it does not make sense that it would move him to Macomb Correctional Facility (his prison-of-choice, as it were) and then leave him there for almost six months.  But MDOC did just that.

13

Further, Ward claims that "[t]he most recent transfer order illustrates the point." (Dkt. 268, Mot. at 6.)[5]  To the contrary, it is Ward's disingenuous description of this transfer order that illustrates the point.  He tries to show MDOC's improper motives by claiming, "As reasons, the MDOC noted that Mr. Ward is a 'strict vegetarian' and moving him was necessary 'to accommodate bed space for an incoming prisoner. . . .' "  (Id.)  He then says that MDOC was "forced to admit" that Ward is not on a vegetarian diet.  This is Ward's attempt to give this Court the impression that the "vegetarian diet" excuse is something MDOC cooked up as a pretext to transfer him.

Two problems.  First, the reference on the transfer order to Ward's strict vegetarian diet is not a reason for the transfer.  It is on the transfer order to alert Chippewa CF that Ward is on a strict vegetarian diet so that Chippewa can accommodate him when he arrives.

The second problem is more serious.  In his effort to smear MDOC, Ward has chosen not to inform this Court that the reason MDOC thought Ward required a strict vegetarian diet was because, eight years ago, Ward *told* MDOC that he required a strict vegetarian diet.  (2/9/10

---

[5] Ward is referring to the November 2017 transfer from Macomb to Chippewa.  This is no longer the most recent transfer, as Ward has been transferred to Michigan Reformatory in Ionia since filing his motion.

Mem., attached as Ex. B.)  Ward told his chaplain that he was a Mahayana Buddhist, and as such, he required a vegan vegetarian diet "in conformity with Buddha's teachings[.]"  (*Id.* ¶ 3.)  Ward wrote, "I am <u>Vegan</u> Vegetarian, Mayahana-Buddhist.  I do not <u>believe</u> in eating the flesh of any living or dead creature, nor any derivatives or by-products thereof, as to do so not only creates bad karma . . . but also violates the Buddha that exists in <u>all</u> life itself[.]"  (*Id.*)  Specifically, Ward wrote, "I can eat only Fruits, nuts, Leggumes, vegetables, grains, that should be prepared & served in a manner similar to the keeping of Kosher (as in orthodox Judaism) . . . I <u>cannot</u> eat meat or the flesh of any living or dead creature (or any by-products/derivatives therefrom)."  (*Id.* ¶ 4.)

The fact that Ward is willing to imply to this Court that MDOC was guilty of some sinister plot against him by concealing from this Court the basis of MDOC's belief that he was a strict vegetarian calls into question Ward's credibility and renders all of his unsupported claims dubious.

Ward has given this Court every reason to doubt him, and *no* reason to doubt that the reasons MDOC has transferred Ward are exactly the reasons MDOC has said they have transferred Ward.  These

are not retaliatory reasons, and Ward has not shown entitlement to transfer even if Appellate Rule 23(a) applied, which it does not.

### E. Ward also attempts to deceive this Court about the status of his access to legal materials.

In a similar lie-by-omission, Ward complains that he cannot aid his counsel because he "has been separated from some of his relevant legal records," which "were treated as 'excess' legal paperwork and therefore removed from his immediate presence as contraband." (Dkt. 268, Mot. at 10.) As evidence, he attaches a contraband removal record which indicates in part, "Excess To be Determined." (*Id.*, Ex. H.)

Ward does not tell this Court whether the excess was determined, or what the determination was. In fact, a hearing was held, at which it was determined that all of the property was legal in nature, and "[a]t the conclusion of the hearing all legal property is returned to [Ward]." (Ex. A.)

The facts that MDOC (a) granted Ward a hearing, and (b) essentially ruled in his favor and returned all of his legal property to him, do not fit within Ward's chosen narrative, and so those facts do not appear in his motion. This is yet another omission that calls Ward's credibility into serious question.

16

### F. If Ward wishes to contest his misconduct tickets as "bogus," this is not the forum.

Ward accuses Chippewa officials of "incapacitating him through a flurry of bogus tickets with restrictive penalties."  Ward does not give any support for describing the tickets as "bogus."  Given his demonstrated lack of veracity, this Court should presume that the reason Ward has received a "flurry" of tickets is that he has committed a flurry of misconducts.  One clue he gives as to why "some" (he does not say how many) of the tickets might be unwarranted is that some of the tickets were for bathroom violations, and Ward has "serious bladder problems as a 67-year old[6] man with an enlarged prostate."  (Dkt. 268, Mot. at 3.)

The only way this establishes that the tickets are "bogus" is if it is per se impermissible for MDOC to apply any bathroom rules to their prisoners with enlarged prostates.  Certainly some individuals need more accommodations than others in access to bathrooms.  But the fact that Ward got tickets for bathroom violations is not evidence that MDOC is failing to make those accommodations, as Ward would like

---

[6] In fact, Ward is 66 years old.

this Court to imagine—rather, it is evidence that Ward is failing to follow the rules.

Similarly, Ward complains that he was given a ticket "for the improper storage of a footlocker that contained information about this case." (Dkt. 268, Mot. at 3.)  The mere fact that Ward is entitled to have legal materials relating to his habeas case does not give him carte blanche to store those materials any way he sees fit.  MDOC is still entitled to enforce rules on the storage of a footlocker.  Ward's ticket is not evidence that MDOC is punishing him for having legal materials—rather, it is evidence that Ward is failing to follow the rules.

In any event, if Ward has a legitimate claim that there is anything improper about his misconduct tickets, there are forums open to him. This is not that forum.  In the complete absence of any evidence that these tickets are improper, this Court should presume that Ward has earned every ticket he has received.  Consequently, any difficulty Ward has in communicating with counsel is of his own making.

### G. Ward has misstated the penalty for his misconducts.

Ward has claimed that, as a result of his misconduct tickets, he is "barred from making phone calls—even to his lawyers for ongoing

litigation purposes." (Dkt. 268, Mot. at 2.)  But Ward cites the document, "Loss of Privileges Sanction," which is Attachment E to the Policy Directive 03.03.105, which Ward has attached to his motion as Exhibit E.  And the Loss of Privileges Sanction states, "Telephone, *except* calls to the Office of Legislative Corrections Ombudsman *and to return calls from an attorney upon request of the attorney*." (Dkt. 268-6, Policy Directive 03.03.015 at 23 ¶ K (emphases added).)

Policy Directive 05.03.130 confirms, this, explaining, "While on a telephone restriction, prisoners *shall be allowed* to make calls to attorneys . . . ." (Policy Directive 05.03.130 (attached as Ex. C) ¶ JJ (emphasis added).)  That directive goes on to explain that the calls *may be limited by the Warden* . . . to calls upon request of the attorney . . . ." (*Id.* (emphasis added).)  This language suggests that the warden has the discretion to lift this limitation—and Ward has not indicated that he has requested any such exception or that such a request has been denied.[7]

---

[7] To be clear, Ward would not be entitled to any remedy if such a request were denied.  The State only brings this up because the language of the policy directive indicates that Ward might be able to mitigate some of his supposed hardship simply by asking, rather than seeking extraordinary relief from a federal court.

Ward complains that MDOC requires him to arrange a time to call his attorney.  This is a reasonable restriction on Ward's freedom consistent with his status as a prisoner, created by his decisions to traffic in drugs and to violate his parole.  While it may cause some inconvenience in preparing his pleadings, it is no more than any other prisoner has to deal with.  It also bears noting, again, that the State has never objected to any of the extensions of time Ward has sought in this case.

**Relief Sought**

Respondent respectfully requests that this Court deny Petitioner's motion and discharge the order to show cause.  The motion has no legal basis, because Appellate Rule 23(a) only applies to cases pending on appeal.  The motion has no factual basis, because Ward has not explained why his counsel cannot prepare his brief without frequent contact, nor has he even attempted to explain why the transfer either divested this Court of jurisdiction or complicated the litigation.

Further, Ward has attempted to trick this Court by omitting material facts from his motion in order to paint MDOC in an unfair light and to show a retaliatory motive that does not exist.  Similarly, he calls the misconduct tickets he received "bogus" without alleging any basis to call those tickets into question.

Finally, to the extent Ward seeks transfer to "another facility located closer to his counsel," he already has that relief, as he was transferred, after filing his motion, from Chippewa Correctional Facility in Kincheloe to the Michigan Reformatory in Ionia, which cuts the distance from his attorney's office roughly in half.

For any or all of these reasons, this Court should deny the motion.

Respectfully submitted,
BILL SCHUETTE
Attorney General

s/Linus Banghart-Linn

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 373-4875
banghart-linnl@michigan.gov
P73230

Dated:  February 20, 2018

22

## <u>Certificate of Service</u>

I certify that on February 20, 2018, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE ARTHUR J. TARNOW
TODD SHANKER, ATTORNEY FOR PETITIONER
BRANDY Y. ROBINSON, ATTORNEY FOR PETITIONER
BRADLEY R. HALL, ATTORNEY FOR PETITIONER

BILL SCHUETTE
Attorney General

<u>s/Linus Banghart-Linn</u>

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI 48909
(517) 373-4875
banghart-linnl@michigan.gov
P73230