UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL WARD,

    Petitioner,                       CASE NO. 2:03-cv-72701

v.                                   HON. ARTHUR J. TARNOW

HUGH WOLFENBARGER,

    Respondent.

_____

**Respondent's Supplemental Brief**

Michael Ward filed his habeas petition in 2003, challenging two 1971 controlled substance convictions for which he had long since served his time. Ward represented to this Court that he had not been properly informed of his appeal rights, and on that basis this Court granted a writ of habeas corpus, ultimately ordering the two convictions vacated.

The convictions were vacated. A few months later, in November 2004, Ward was granted parole. In July 2005, Ward was arrested in a motel room, where he was having a "party" with three teenagers. Ward was naked from the waist down, and there were pornographic videos and alcohol present as well.

Ward pleaded no contest to parole violations, and was returned to prison. Shortly thereafter, he filed an emergency motion asking this Court to reopen the case and alleging that the Parole Board was continuing to hold the expunged convictions against him and that the State was not in compliance with this Court's order granting habeas relief.

In fact, the convictions have been vacated, and the State is in compliance. It is unfortunately true that, despite great efforts to prevent it, references to the expunged convictions do appear on documents Ward requests MDOC to generate. But this does not show that Ward is being unconstitutionally confined, and it does not mean that he is entitled to the extreme remedy of unconditional release.

## I. Ward must show that the 1971 convictions are actually being considered by the Parole Board in his parole determinations.

The crux of this case is Ward's claim that, although the expunged 1971 convictions were vacated, the Parole Board has nonetheless considered them and used them against him to deny him a second parole. Ward has presented evidence that, despite the great lengths the MDOC has gone to to wipe out any trace of the 1971 convictions, they still appear sometimes in documents Ward requests from the MDOC.

2

Ward argues that he does not need to show that he is actually being denied parole based on the 1971 convictions—that the mere presence of references to the convictions in his file establishes the constitutional violation and entitles him to release.  Ward is mistaken.  To obtain relief, Ward must show that "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  If Ward is not being denied parole because of these expunged convictions, then he is not in custody because of them.

Essentially, what Ward seeks is a windfall.  Habeas relief does not exist to punish a state agency that finds itself unable to fully send historical facts down the memory hole.  It exists to relieve prisoners of unconstitutional confinement.  Under Ward's logic, *any* prisoner denied parole, no matter how unqualified for it—can be freed by a federal court if he can show that a stray reference to a vacated or expunged conviction appears somewhere in his file where a Parole Board member might have looked at it.

This rule goes too far.  To grant Ward the extraordinary relief he is seeking, this Court should assure itself that the expunged convictions are somehow contributing to Ward's continued incarceration.  Because

3

they are not, this Court should deny Ward's motions and once again close the case.

## II.   Ward cannot show that the Parole Board is using the 1971 convictions to deny him parole.

One compelling piece of evidence that Ward is not being denied parole due to the expunged 1971 convictions is the fact that the Parole Board has already granted him parole.  If the Parole Board were (a) willing to impermissibly consider expunged convictions in making its decision, and (b) concerned about Ward's suitability for parole based on the fact that he used marijuana and LSD as a teenager, then it ought to have denied him parole in 2004.  Instead, it granted him parole, which indicates either that it did not consider the expunged convictions, or did not care about them, or—which is most likely—that it did not consider them *and* would not have cared about them if it had.

At that point, the choice was Ward's.  If he had complied with the conditions of his parole, the Parole Board would never even have had the opportunity to hold his 1971 convictions against him, even if for some reason it wanted to.  Instead, Ward chose to violate the trust the Board had placed in him.  And he did not do so in a minor way such as failing to check in with his parole officer or not keeping his address

4

updated.  As described above, Ward's parole violation consisted of bringing three teenagers to a hotel and exposing them to alcohol, pornography, and himself.

And this is why the second compelling piece of evidence that Ward is not being denied parole due to the 1971 convictions is the fact that Ward violated parole in such an extreme manner.

In all of Ward's parole reviews since this time, two facts have loomed large—the fact that he is serving a life sentence for his crime, and the fact that he broke his promise the first time he was granted parole.  In comparison to this, two more than 35-year-old convictions for relatively minor felonies are a virtual non-factor.  Again, the Parole Board already demonstrated that these convictions were no bar to parole, whether due to their expungement or their age and lack of severity, or both.

In order to show entitlement to relief, Ward needs this Court to believe that the Parole Board was willing to look past his 1981 conviction for trafficking almost two million dollars' worth of cocaine, and even willing to look past his violation of the Board's trust by being half-naked in a hotel with teenagers, alcohol, and pornography, but just

could not get past the fact that he possessed marijuana and LSD as a teenager.

A third compelling piece of evidence against Ward's arguments is the fact that he has other prior controlled substance convictions—two in Texas and one in Illinois.  (5/2017 Case Summary Report at 4; 7/2012 Case Summary Report at 4.)  This is not a case in which the Parole Board might be improperly considering two prior convictions when it should be considering the parole of a first-time offender.

The State has attached to this brief the four case summary reports for Ward's last four file reviews: conducted in July 2007, October 2007, July 2012, and May 2017.  Although the Parole Board member reviewing a prisoner's file has access to a great deal of information (including, as Ward points out, documents that unfortunately include the 1971 convictions), no person could examine every page and incorporate it into a decision.  The case summary reports are a distillation of the relevant information the reviewing Parole Board member looked at (whether it was used as a basis for the decision or not).

None of the case summary reports for the last four file reviews identifies the 1971 convictions.  The two most recent reports, May 2017

and July 2012, state, "('A1' and 'A2' were expunged.)"  (5/2017 Case

Summary Report at 4; 7/2012 Case Summary Report at 4.)  Even if the

Parole Board members reviewing Ward's file ran across any stray

references to the expunged convictions in Ward's file, those members

were indisputably on notice that those convictions were expunged, and

could not be considered in making a parole decision.  And the

convictions themselves are not even described in the reports.  The 2012

and 2017 reports simply refer to them as "A1" and "A2."  The two 2007

reports do not identify the 1971 convictions at all; they simply say that

Ward's criminal history "Includes drug/alcohol related crimes."

(10/2007 Case Summary Report at 4; 7/2007 Case Summary Report at

4.)

       While this latter fact might be problematic if the 1971 convictions

were Ward's only prior brush with the law, they were not.  As the July

2012 and May 2017 reports point out, Ward has a criminal history

outside of Michigan, including "Smuggling Marijuana (Brown[s]ville,

TX), Poss of Marijuana (IL) Poss W/I to Dist Marijuana 5 yr Prison

term. (San[ An]tonio, TX, 3 Cts Distrib/Poss W/Intent to Dist Cocaine."

(5/2017 Case Summary Report at 4; 7/2012 Case Summary Report at 4.)

So, there is nothing inaccurate about saying, even without the

7

expunged convictions, that Ward has a criminal history that "[i]ncludes drug/alcohol related crimes."

And beyond that, the two Parole Board members who conducted Ward's last two file reviews have attested in affidavits that they were unaware of the nature of Ward's expunged convictions. (See Exh. 1, Aff. of Anthony E.O. King, at 1-3; Exh. 2, Aff. of Edwin Heap, at 1-3.) Even if they had been aware that the two convictions were from 1971, they would not have considered them in their review. (*Id*.) Further, they attest that even if they had considered the expunged convictions in their review, it would not have made a difference to their final recommendation. (*Id*.) Specifically, both King and Heap indicate that because of the age and severity of the 1971 convictions, they would have made no impact on their decision. Instead, they focused on Ward's prior parole failure and subsequent institutional record in making their respective recommendations. (*Id*.)

### III. A "B Prefix" has no significance in the consideration of a prisoner for parole.

Ward has also asserted that the fact that he has a "B prefix" before his prisoner number adversely affects is chances for parole. He is mistaken. The prefix indicates that Ward is serving his second term of

8

incarceration in a Michigan prison.  And this is true—regardless whether Ward's A-prefix convictions (the expunged 1971 drug convictions) were vacated, it remains a matter of historical fact that he served time in MDOC custody for those convictions.

But a prisoner's prefix is not a reliable proxy for his criminal history, and Parole Board members (who have access to a prisoner's *actual* criminal history) do not rely on the prefix in making parole decisions.  (Exh. 1, Aff. of Anthony E.O. King, at 2, ¶9; Exh. 2, Aff. of Edwin Heap, at 2, ¶9.)  A prisoner could have a lengthy criminal history that includes sentences served in Michigan jails, in federal prison, or in the prisons and jails of other states and foreign countries, and still have an A prefix.  And conversely, a prisoner could have served multiple sentences in MDOC custody that were later overturned, expunged, or pardoned, and that prisoner could have a B, C, D, or higher prefix without any prior convictions.

Not only that, but a B or higher prefix does not contain any information about how long the earlier sentence or sentences were, or for how many crimes they were served, or what the crimes were.  One prisoner could serve 30 years for assault with intent to murder, torture, armed robbery, criminal sexual conduct and the like, and another could

serve two years for a third-offense operating while intoxicated.  When those two prisoners return to MDOC custody for their second period of incarceration, they will both have B prefixes.

For all of these reasons, it does not make sense for members of the Parole Board to consider the prisoner's prefix as containing any useful information for their decision.  To use the B prefix would be to make a guess about the prisoner's criminal history that could overstate the history (by counting sentences for an expunged conviction) or understate the history (by omitting out-of-state sentences).  And in fact, Ward's B prefix does *both*.  The Parole Board has access to the prisoner's actual criminal history and does not need to rely on this unreliable proxy.

And in fact, as noted above, parole members King and Heap did not rely on the prefix in considering Ward for parole.  (Exh. 1, Aff. of Anthony E.O. King, at 2, ¶9; Exh. 2, Aff. of Edwin Heap, at 2, ¶9.) Thus, Ward cannot demonstrate that he is in custody on the basis of his B prefix, and he is not entitled to any relief on this basis.

### IV.   One factor the Parole Board may consider in making a parole decision is a prisoner's refusal to accept responsibility for his past misconduct.

Ward devotes several pages of his pro se brief to explaining why his violation of parole was not that bad and should not be used by the Parole Board as a basis to continue to deny him parole.  First of all, the argument is irrelevant.  If Ward could show that the Parole Board *is not* using his parole violation to deny his second parole, then it might strengthen his argument that the Board is relying on something else.  But for Ward to attempt to show that the Parole Board *should not* (in his opinion) be using his parole violation to deny his second parole is meaningless—if the Board is relying on the parole violation, that is evidence that it is not relying on the expunged convictions.  As the affidavits bear out, Ward's previous parole failure was considered by the parole board members.  For King, Ward had done enough time for the acts he committed when he violated his parole.  (Exh. 1, Aff. of Anthony E.O. King, at 2, ¶12.)  Therefore, he expressed interest in parole.  For Heap, Ward's violation of his parole, and its "egregious" nature, led him to express no interest in parole.  (Exh. 2, Aff. of Edwin Heap, at 2, ¶11.)

But this is relevant in another respect.  Ward seeks to retell this old story in a way that minimizes his culpability and casts doubt on the

victims.  Ward had the opportunity to contest the accusations and (if he indeed did nothing wrong) to avoid parole revocation and criminal liability altogether.  (Indeed, according to Ward, the criminal charges against him were dismissed for lack of probable cause, so there was *no* need for him to plead to the parole violations to avoid criminal liability.) Ward declined to contest the accusations.

Now, he wants to relitigate what he declined to litigate some 13 years ago.  He says that the parole violation charges to which he pleaded no-contest are "fatally factually flawed," and contends that he never exposed himself to any of the teenagers, but only unintentionally to the "trespassing parents."  (Pro Se Br. at 36.)  He contends that he "never should have been placed back in prison as an alleged PV.  He did no wrong, in the eyes of the law."  (*Id.* at 38.)

The Parole Board is required by statute to consider "the prisoner's mental and social attitude," as part of its consideration as to whether to grant a prisoner parole.  Mich. Comp. Laws § 791.233(1)(a).  By regulation, the Board must consider "[t]he prisoner's personal history and growth, including . . . [d]emonstrated willingness to accept responsibility for past behavior."  Mich. Admin. Code R. 791.7715(2)(d)(i).  Ward has demonstrated, at best, an inconsistent

willingness to accept responsibility for past behavior.  Indeed, his brief to this Court insisting that he "did no wrong" is a perfect example of that inconsistency.

### V. The presence of the expunged convictions on Ward's parole violation worksheet, while improper, did not prejudice Ward.

Ward has attached as Exhibit F to his counsel brief (PageID #3840) a Parole Violation Worksheet and Decision form that lists the 1971 convictions and does not contain any indication that they were expunged.  While the State does not contest that those convictions should not have appeared on that form, Ward cannot show any prejudice from this error.  The form in question was not used to inform any decision to grant or deny parole.  It is a parole violation worksheet. The only way the presence of the convictions on the worksheet might have prejudiced Ward is if there had been some possibility that Ward would not be returned to prison despite his serious violations, but that it was the 35-year-old low-severity marijuana and LSD convictions for which Ward had already served his time that were being used against him.  The idea that Ward was returned to prison based on the expunged convictions is, if possible, even more implausible than the idea that that he has been denied parole based on the expunged convictions.

13

## VI.   Ward has not shown any retaliation, vindictiveness, or appearance of vindictiveness.

Ward also asserts that he is the victim of vindictiveness on the part of the Parole Board.  This is false.  Ward mostly supports this claim by telling uncorroborated stories about his stay in prison.  (Exs. 5h–5j to Ward's pro se Br., PageID # 4328–39.)  Some of these stories, if true, are troubling.  Others less so.  But what none of them demonstrate is that Ward is being denied parole based on his expunged convictions. If Ward feels he is being mistreated in prison, his recourse is a lawsuit under 42 U.S.C. § 1983.  These claims of vindictive retaliation are complaints about the conditions of his confinement, not the fact or duration of the confinement.

The State does not concede that any of Ward's allegations are true.  Nor does the State concede that any of the allegations, if true, violate Ward's constitutional rights.  But even assuming any of them were true, they are not cognizable in a habeas action.  "Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement[.]"  *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).  Ward's

action properly attacks the length of his confinement, but his

vindictiveness arguments do not.

**VII.   The fact that the Parole Board must hold a public hearing before granting Ward parole is not a sign of vindictiveness or abuse of power.**

Ward complains that the Parole Board is abusing its power by

insisting that it is required to hold a public hearing before granting him

parole.  Ward says that, because the Parole Board already held a public

hearing, it need not hold another one.  His argument is legally

meritless.

"A decision to grant or deny parole to the prisoner must not be

made until after a public hearing . . . ."  Mich. Comp. Laws

§ 791.234(8)(c).  Ward had a public hearing before his first grant of

parole.  Now he seeks another grant of parole, and, if the process goes

that far, he will need another public hearing.  The idea that a second

hearing would be redundant is patently wrong.  Fifteen years have

passed since the first public hearing.  Much has happened since then,

most significantly the choices Ward made when he violated his parole.

Ward claims that the Parole Board has "**admit[ted]** it has NO

STATUTORY AUTHORITY to require a redundant **second public**

**hearing**[.]"  (Pro Se Br. at 33, PageID # 4254.)  This is false, and it is

15

based on a misreading of a letter Ward received from the Parole Board. The letter (Exhibit 136 to Ward's Pro Se Brief, PageID # 4637) says that "MCL 791.234 does not specifically address the issue of a prisoner with a life sentence having a second public hearing in the event he/she is returned to prison for a parole violation." And this is true—the statutory language does not specifically distinguish between a *first* grant of parole, a *second* grant of parole, and so on. But it does not follow from this that the provisions of the statute only apply to a first grant of parole.

The statutory authority—indeed, duty—to conduct a public hearing is the same for a second grant of parole as it is for a first. It comes from § 791.234(8)(c). And, as the letter Ward cites in support of his argument says, "The Parole Board is required by statute to consider all relevant facts and circumstances regarding each case before them[.]" (Ex. 136 to Ward's Pro Se Brief, PageID # 4637.) It does not make sense to refuse to hold a statutorily required public hearing that would allow full consideration of 15 years' worth of "relevant facts and circumstances."

16

## VIII. While Ward is not entitled to any relief at all, if this Court disagrees, it can craft relief that is tailored to the violation and not as extreme as an order of unconditional release.

Ward also argues that, as a result of the supposed violation, he is entitled to nothing less than an unconditional release. This is incorrect. Although the State contends that Ward has shown no violations at all, the most he has conceivably shown is a parole process tainted by the presence of two invalid convictions. When an appellate court reviews a trial and finds that the jury's verdict was tainted by the admission of inadmissible evidence, the court does not order a judgment of acquittal. The remedy is retrial. And so here—if this Court agrees with Ward's implausible argument that his parole proceedings were tainted by the impermissible consideration of expunged convictions, the remedy is not release—the remedy is an untainted parole proceeding.

This Court can take steps to manage the parole consideration proceeding that, while the State would contend are unduly intrusive, would still be far less intrusive than declaring the Parole Board incapable of fairly considering Ward, and would not result in the windfall of unconditional release.

17

## Conclusion and Relief Requested

For these reasons, the State respectfully requests that this Court find that the State is in compliance with its order, deny Ward's pending motions, and again close this habeas case.  If this Court determines that Ward is entitled to relief, the State respectfully requests that this Court tailor the relief to the violation, rather than ordering unconditional release.

Respectfully submitted,

DANA NESSEL
Attorney General

s/Linus Banghart-Linn

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-7655
banghart-
linnl@michigan.gov
P73230

Dated:  February 12, 2019

## <u>Certificate of Service</u>

I certify that on February 12, 2019, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

HONORABLE ARTHUR J. TARNOW
HARALAMBOS D. MIHAS, PETITIONER ATTORNEY


DANA NESSEL
Attorney General

<u>s/Linus Banghart-Linn</u>

Assistant Attorney General
Appellate Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7655
banghart-linnl@michigan.gov
P73230